# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal Action No. RDB-06-179 |
| JERMAINE BELL, | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

On August 27, 2008, Defendant Jermaine Bell ("Defendant" or "Mr. Bell") pled guilty to Possession of a Firearm in Furtherance of a Drug Trafficking Offense Resulting in Death, in violation of 18 U.S.C. § 924(j). (ECF No. 247.) Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the Government and the Defendant agreed upon a sentence in the range of 312 to 396 months (or 26–33 years) of incarceration.[1] (ECF No. 200.) In accordance with the plea agreement, on December 23, 2008, this Court sentenced Mr. Bell to 360 months (or 30 years) of incarceration with credit for time served in federal custody since December 11, 2006, followed by three years of supervised release (ECF No. 247.) Mr. Bell is now 50 years old and currently incarcerated at Yazoo City Medium FCI, in Yazoo City, Mississippi, with a projected release date of January 20, 2033. *Find an Inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc (search by register number: 33031-037) (last accessed Jan. 12, 2026).

---

[1] In a Rule 11(c)(1)(C) plea agreement, the defendant agrees to plead guilty or no contest to a charged or lesser offense, and the government's attorney agrees to a specific sentence or sentencing range. FED. R. CRIM. P. 11(c)(1)(C). Once the court accepts the plea agreement, the sentence or sentencing range in the plea agreement becomes binding on the Court. *Id.*

Presently pending before this Court is Defendant's *pro se* Motion for a Reduced Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 560), as Supplemented by appointed counsel (ECF No. 565) (collectively, ("Motion for Compassionate Release" or "Defendant's Motion"). *See* (ECF No. 562, Order appointing CJA counsel).[2]  In his Motion, Mr. Bell argues that his traumatic childhood and youth at the time of the offense, the length of his sentence as compared to those of similar defendants, and his rehabilitation while incarcerated demonstrate "extraordinary and compelling" reasons to warrant a sentence reduction. *See generally* (ECF Nos. 560, 565). The Government has responded in opposition (ECF No. 570), and Defendant has replied (ECF No. 572). The Court has reviewed the relevant filings, and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2025).  For the reasons that follow, Mr. Bell's Motion for a Reduced Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF Nos. 560, 565) is DENIED.

## BACKGROUND

On February 7, 2008, a federal grand jury sitting in Baltimore returned a Fourth Superseding Indictment (ECF No. 146) charging Mr. Bell with (1) Conspiracy to Distribute Heroin in violation of 21 U.S.C. § 846; (2) Conspiracy to Possess Firearm in Crime of Violence in violation of 18 U.S.C. § 924(o); (3) Possession of a Firearm in Furtherance of a Drug Trafficking Crime Resulting in Death, in violation of 18 U.S.C. § 924(j); (4) Possession of a Firearm in Furtherance of a Drug Trafficking Crime Resulting in Death in violation of 18 U.S.C. § 924(j); (5) Possession of a Firearm in a Drug Trafficking Crime in violation of 18

---

[2] Via Memorandum Order (ECF No. 532) dated November 4, 2022, this Court denied Defendant's previous Motion for Compassionate Release (ECF No. 516).  Defendant then filed a *pro se* Motion for Compassionate Release (ECF No. 560), and this Court by Order (ECF No. 562) dated May 27, 2025, appointed CJA counsel, see (ECF No. 565), who Supplemented that Motion (ECF No. 565).

U.S.C. § 924(c); and (6) Possession of a Firearm in Furtherance of a Drug Trafficking Crime Resulting in Death in violation of 18 U.S.C. § 924(j). (ECF No. 146.) On August 27, 2008, Mr. Bell pleaded guilty pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) to Count Four of the Fourth Superseding Indictment, which charged him of firearm possession in furtherance of a drug-trafficking crime resulting in death. (ECF No. 200.) In his plea agreement, Mr. Bell agreed to certain factual and sentencing stipulations. (*Id.*) The following factual history is derived from those stipulations.

Between 1996 and at least December 2001, Mr. Bell was the leader of a narcotics-trafficking organization known as "R-N-G." (*Id.* Attach. A.) Mr. Bell's organization distributed heroin at multiple street-level shops under several "brand names," including "Big White." (*Id.*) In 2001, Mr. Bell became involved in a turf dispute with a rival drug organization and issued contracts for the murders of Samuel Garrett—the leader of the rival drug organization—and several of his associates, including Kenyatta Harris, Angelo Stringfellow, and Torrence Jonson. (*Id.*) On June 26, 2001, in furtherance of Mr. Bell's orders, co-Defendants Corey Smith, Linwood Smith, Sean Sterling, William Deshields, and Andre Brown located Mr. Stringfellow in his car in Baltimore, Maryland. (*Id.*) Co-Defendants Mr. Deshields and Mr. Brown shot Mr. Stringfellow in his parked car and, several hours later, Mr. Stringfellow died from his wounds. (*Id.*) A female standing near the vehicle was also shot and wounded. (*Id.*)

On February 7, 2008, Mr. Bell was charged with, among other charges, three counts of Possession of a Firearm in Furtherance of a Drug Trafficking Crime Resulting in Death in violation of 18 U.S.C. § 924(j). (ECF No. 146.) On August 27, 2008, Mr. Bell entered into a plea agreement pursuant to which he pleaded guilty to Possession of a Firearm in Furtherance

of Drug Trafficking Resulting in Death, for the murder of Mr. Stringfellow. *See generally* (ECF No. 200.) Pursuant to the Federal Sentencing Guidelines, U.S.S.G § 2A1.1, the parties stipulated that the base offense level was 43 but ultimately agreed to an adjusted offense level of 41. (*Id.* at 4.) The parties further agreed under Rule 11(c)(1)(C) to a sentence in the range of 312 to 396 months of imprisonment. (*Id.* at 4–5.) On December 23, 2008, this Court sentenced Mr. Bell to a term of imprisonment of 360 months, followed by three years of supervised release. (ECF No. 247.) Mr. Bell appealed his case to the U.S. Court of Appeals for the Fourth Circuit, which affirmed his conviction and sentence on January 4, 2010. (ECF No. 295.) Mr. Bell then filed a Petition for Writ of Certiorari to the United States Supreme Court, which was denied on May 3, 2010. *Bell v. United States*, 559 U.S. 1114 (2010). Since his direct appeal, Mr. Bell has sought various forms of post-conviction relief,[3] including the pending Motion for Compassionate Release. (ECF No. 560, 565.)

## STANDARD OF REVIEW

The First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194, established significant changes to the procedures involving compassionate release from federal prison.  Prior to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provided the Bureau of Prisons ("BOP") with sole discretion to file compassionate release motions with the Court.  With the passage of the First Step Act, defendants are now permitted to petition federal courts directly for compassionate release whenever "extraordinary and compelling reasons" warrant a reduction in sentence.

---

[3] In 2012, Mr. Bell filed a Motion for Reconsideration, which resulted in the reopening of his case, *see* (ECF Nos. 397, 413), but was ultimately denied, *see* (ECF No. 424). He has filed two motions to vacate his conviction under 28 U.S.C. § 2255, both of which this Court denied. (ECF No. 337, 395, 396, 487, 493, 494.) In addition, Mr. Bell has sought sentence reductions in November 2014 and 2021, *see* (ECF No. 419, 516).  This Court denied all prior motions for sentence reductions, *see* (ECF Nos. 493, 494, 532).

The Act permits a defendant to seek a sentence reduction after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Once these mandatory conditions are satisfied, this Court may authorize compassionate release upon a showing of "extraordinary and compelling reasons" warranting a reduction and after weighing the factors presented in 18 U.S.C. § 3553(a).  18 U.S.C. § 3582(c)(1)(A)(i).

## ANALYSIS

### I.    Administrative Exhaustion Requirements

Mr. Bell has exhausted his administrative remedies. Before a defendant may file a motion for compassionate release, one of the mandatory conditions laid out in 18 U.S.C. § 3582(c) requires him to either "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or demonstrate that thirty days have lapsed "from the receipt of such a request by the warden of [his] facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). In this case, Mr. Bell has met his administrative exhaustion requirements by demonstrating that, through counsel, he submitted an administrative request for a reduced sentence, and the warden of FCI Yazoo City failed to respond within 30 days. *See* (ECF No. 565, Ex. A.)

### II.    Extraordinary and Compelling Circumstances

Notwithstanding his exhaustion of administrative remedies, Mr. Bell has not demonstrated the extraordinary and compelling circumstances necessary to reduce his sentence.  The United States Sentencing Commission is charged with defining "what should

be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C.

§ 3582(c)(1)(A). 28 U.S.C. § 994(t).  The Commission has identified six possible circumstances

that viewed separately or together may establish "extraordinary and compelling reasons" for a

sentence reduction.  These reasons include:

> (1) a serious medical circumstance of the defendant;
> (2) a defendant who is 65 years old that suffers from serious health deterioration and has served either 10 years or 75 percent of his or her term;
> (3) the death or incapacitation of an immediate family member;
> (4) the defendant being a victim of abuse while in custody;
> (5) other reasons of similar gravity as (1)–(4); and
> (6) unusually long sentence if the defendant has served at least ten years.

U.S.S.G. § 1B1.13(b)(1)–(6).

Mr. Bell provides three broad arguments that he contends present "extraordinary and

compelling reasons" to reduce his sentence: (1) his traumatic childhood and relative youth at

the time of the offense (ECF No. 560 at 8–10; ECF No. 565 at 9–14); (2) the disparity between

his sentence and similarly situated defendants in comparable cases (ECF No. 560 at 5–8; ECF

No. 565 at 14–18); and (3) his rehabilitation while incarcerated.[4] (ECF No. 560 at 10–13; ECF

No. 565 at 18–19.) In Opposition, the Government asserts that Mr. Bell's age and background

do not justify a sentence reduction because he was twenty-six at the time of the crime, and

that is "not an age that is generally associated with youthful impulsivity." (ECF No. 570 at 5.)

---

[4] In his *pro se* Motion for Compassionate Release, Mr. Bell proffers four arguments that he contends are "extraordinary and compelling reasons" to reduce his sentence to time served: (1) the disparity between his sentence and the average sentence for murder; (2) his relative youth at the time of the offense; (3) his rehabilitation while incarcerated; (4) his belief that he no longer presents a threat to the community. (ECF No. 560.) In the Supplementary Motion for Compassionate Release, Mr. Bell's counsel asserted three arguments to justify the requested reduction: (1) his traumatic childhood and youth status at the time of the offense; (2) the disparity between his 360-month sentence and similarly or more culpable defendants in comparable cases; and (3) his rehabilitation while incarcerated. (ECF No. 565.) Although somewhat overlapping, the Court considers all arguments across both filings and, to the extent any claims are raised solely in a *pro se* capacity, those claims are treated less stringently. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Additionally, the Government emphasizes that there is neither a change in the law nor a disparity between Mr. Bell's sentence and those of similarly situated defendants. (*Id.* at 7.) Finally, the Government argues Mr. Bell's rehabilitation is insufficient when considered alongside the other factors. (*Id.* at 11–12.) In reply, Mr. Bell argues that courts can consider youth in combination with sentencing disparities and rehabilitation to form extraordinary and compelling reasons that warrant a sentence reduction (ECF No. 572 at 1).  The Court addresses each argument in turn.

Although youth is not a reason explicit under U.S.S.G. § 1B1.13(b), federal courts generally consider youth at the time of the offense to fall under the "other reasons" category enumerated in U.S.S.G. § 1B1.13(b)(5). *See, e.g.*, *United States v. Moses*, Crim. No. CCB-02-0410-2, 2023 WL 4421569, at *4 (D. Md. July 10, 2023) (recognizing youth as a possible extraordinary and compelling reason that could warrant sentence reduction); *United States v. Taylor*, Crim. No. CCB-02-0410-3, 2023 WL 4407593, at *4 (D. Md. July 7, 2023) (considering youth status at the time of the offense as a potential extraordinary and compelling reason); *United States v. Brown*, No. 2:11-cr-152, 2024 WL 3357836, at *5 (E.D. Va. July 10, 2024) (considering youth under U.S.S.G. § 1B1.13(b)). The Supreme Court has acknowledged that juveniles, defined as individuals under age eighteen, have "[a] lack of maturity and an underdeveloped sense of responsibility" that leaves them vulnerable to negative influences and pressure. *Roper v. Simmons*, 543 U.S. 551, 569 (2005) (quoting *Johnson v. Texas*, 509 U.S. 350, 367 (1993)). *See also Graham v. Florida*, 560 U.S. 48, 68–69, 72 (2010) (emphasizing that youth immaturity and irresponsibility render juveniles more susceptible to negative pressure); *Miller v. Alabama*, 567 U.S. 460, 470–72 (2012) (acknowledging that juveniles' culpability is less than

adults' because juveniles' brains are not yet fully developed, resulting in immaturity, impulsivity, and recklessness). As such, courts have historically considered youth-status as a mitigating factor in sentencing and postconviction relief. *Miller*, 567 U.S. at 470–72; *Taylor*, 2023 WL 4407593, at *4.

Although Mr. Bell faced early exposure to drug-related crimes and began engaging in such crimes at the age of fourteen,[5] he was twenty-six at the time he contracted to murder several people in connection with a drug rivalry in this case. (ECF No. 565, at 9.) Thus, he does not qualify as a "juvenile" for the purposes of the Supreme Court's precedents regarding youth culpability. *See, e.g.*, *Roper*, 543 U.S. at 569 (discussing characteristics of juveniles *under the age of 18* at the time of their offenses). Even where federal courts have considered youthful age as a mitigating factor or a factor justifying compassionate release, their consideration of youth generally extends only to defendants who were twenty-four or younger at the time of their crimes. *See, e.g.*, *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020) (acknowledging ages nineteen to twenty-four may still constitute youth status depending on the relative circumstances); *United States v. Burleigh*, 145 F.4th 541, 546 (4th Cir. 2025) (recognizing that youth status may extend to age twenty-four, or even age twenty-five, depending on a defendant's criminal history and the seriousness of the offense). Mr. Bell falls outside of this "youthful offender" category because he was twenty-six years old at the time of the offenses

---

[5] Mr. Bell began selling drugs at age fourteen and began running a small crew at age fifteen. He was intermittently placed in the custody of the Department of Juvenile Services and received a six-year state sentence. He was released again in 1995 at the age of twenty. (ECF No. 565, at 4.)

in this case. Put differently, Mr. Bell does not qualify as a "juvenile" or a "youthful offender" for relief based on youth-status.[6]

Nor is Mr. Bell's sentence disparately long as compared to those of similarly situated defendants. A disparity in sentencing may constitute an "extraordinary and compelling" reason for sentence reduction. *United States v. Brown*, 78 F.4th 122, 124, 126 (4th Cir. 2023). In his Motion, Mr. Bell argues that if he were to be sentenced today, he would receive a lesser sentence. (ECF No. 565, at 15–16.) This argument is most consistent with U.S.S.G. § 1B1.13(b)(6), which contemplates a sentence reduction where a defendant can demonstrate that: (1) he "received an unusually long sentence"; (2) he "has served 10 years of the term of imprisonment"; and (3) due to the change in law, there is a "gross disparity between the sentence being served and sentence likely to be imposed at the time this motion is filed." § 1B1.13(b)(6).

In this case, Mr. Bell fails to satisfy the elements required to demonstrate that he received an unusually long sentence. While he has served at least ten years of his sentence, his sentence is not unusually long, and there is no evidence of a gross disparity in sentencing. This

---

[6] Moreover, even if Mr. Bell's age warranted categorization of juvenile status, youth at the time of offense alone is insufficient to justify sentence reduction. Instead, youth must be combined with other extraordinary circumstances, such as sentencing disparities, previous criminal history, and rehabilitation, to justify sentence modification. *See United States v. Little*, No. 4:97-cr-41-1, 2025 WL 1862997, at *3–7 (E.D. Va. July 7, 2025) (granting compassionate release in part due to the defendant's relative youth at the time of the offense, when considered alongside the gross disparity in the defendant's unusually long sentence, low recidivism risk, and his rehabilitation efforts). By the time Mr. Bell committed the instant offense at the age of twenty-six, he possessed an extensive criminal record. *Cf. Little*, 2025 WL 1862997, at *3–7 (noting defendant's sparse criminal history in conjunction with his age of 23 to 24 years old at time of offenses justified relief); (ECF 565 at 12). Moreover, while his traumatic childhood—including early exposure to substance abuse and violence—is certainly troubling, his childhood history is not so unusual as to constitute an extraordinary and compelling reason for a sentence reduction. *See, e.g.*, *Miller*, 567 U.S. at 470–72 (emphasizing that childhood circumstances, unless unusually troubling, do not amount to an extraordinary or compelling reason that warrants a sentence reduction).

Court has repeatedly recognized that offenders convicted in this District of drug- or gang-related crimes resulting in murder routinely receive sentences "within the thirty-year range." *United States v. Carmichael*, Crim. No. CCB-97-0329, 2023 WL 6809714, at *3 (D. Md. Oct. 16, 2023) (quoting *United States v. Williams*, Crim. No. CCB-07-402, 2021 WL 3725435, at *3 (D. Md. Aug. 23, 2021)); *United States v. Dawson*, Crim. No. ELH-94-0010, 2024 WL 3455002, at *13–*14 (D. Md. July 17, 2024).  Accordingly, Mr. Bell's sentence of 360 months, or thirty years, falls squarely within the typical range imposed upon similarly situated defendants within this District. Moreover, while Mr. Bell emphasizes that his sentence is longer than those of similar defendants, including his co-defendants[7] and other drug organization leaders who also ordered retaliatory killings,[8] Mr. Bell was more culpable compared to those defendants because he orchestrated the murders in his case.

Finally, Mr. Bell argues that his rehabilitation while incarcerated warrants a sentence reduction. While his rehabilitation is commendable,[9] rehabilitation alone in the absence of

---

[7] Mr. Spann, a co-defendant who participated in the contracted murder as the getaway driver, received a twenty-year (240-month) sentence. Mr. Sterling, another co-defendant who participated in the contracted murder as a driver and co-conspirator, received a twenty-two-year (264-month) sentence. While neither Mr. Spann, Mr. Sterling, nor Mr. Bell played the role as the active shooter, Mr. Bell was more involved, and therefore more culpable, than Mr. Spann or Mr. Sterling.  Specifically, unlike his co-defendants, Mr. Bell led the drug organization, contracted for the murders, and orchestrated the crimes.

[8] Mr. Bell contends that his sentencing length is disparately long as compared to Raeshio and Howard Rice (collectively, "the Rice brothers"), who were also leaders of a drug organization involved in violent and nonviolent crime over the span of a decade. (ECF 565, at 14-16). *See also United States v. Rice*, [1:04-cr-00323-JKB-3] (D. Md. Aug. 3, 2022) (Mem. Order), ECF No. 696; *United States v. Rice*, [1:04-cr-00323-JKB-4] (D. Md. Oct. 25, 2022) (Mem. Order), ECF No. 699; Gov't's Opp'n to Mot. for Compassionate Release, *United States v. Hall*, [1:04-cr-00323-JKB] (D. Md. Oct. 9, 2025), ECF No. 717. Mr. Bell's argument falls short, however, given the nonviolent character of the Rice brothers' offense conduct, which resulted in the sentences Mr. Bell refers to in his argument. By comparison, Mr. Bell's offense conduct was violent in nature, resulting in the death of Mr. Sterling. (ECF No. 200, Attach. A.)

[9] In his Motion, Mr. Bell offers evidence of his rehabilitation through his steady employment, completion of his General Education Development (GED) test, and participation in educational, therapeutic, and rehabilitative courses. (ECF No. 565 at 18–19.) He also references his leadership and community involvement as an active mentor for other inmates and at-risk youth. (*Id.*)

10

additional factors is not sufficient to establish "extraordinary and compelling" circumstances. 28 U.S.C. § 994(t); *Burleigh*, 145 F.4th at 552 (acknowledging that rehabilitation alone is insufficient as an "extraordinary and compelling" reason, and instead considering rehabilitation alongside other factors, such as the nature and severity of the offense); *United States v. Millner*, Crim. No. JKB-08-0086, 2024 WL 1678559 (D. Md. Apr. 18, 2024) (emphasizing that rehabilitation efforts, even if commendable, are insufficient in the absence of other "extraordinary and compelling" reasons). Accordingly, as explained above, Mr. Bell has not established an "extraordinary and compelling" reason for relief, and he is ineligible for compassionate release.

## III.    3553(a) Factors

Failure to demonstrate an extraordinary and compelling reason for relief precludes compassionate release.  Nevertheless, for completeness, this Court briefly notes that Mr. Bell's requested relief is also inconsistent with the factors provided in 18 U.S.C. § 3553(a). In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit made clear that "not all defendants . . . should receive new sentences," and that "courts should be empowered to relieve *some* defendants of those sentences on a case-by-case basis."  981 F.3d at 286–87 (internal quotation marks omitted).  Accordingly, a court must conduct an "individualized assessment" under § 3553(a) to determine a defendant's eligibility for a reduction.  *Id.* at 286. Pursuant to § 3553(a), this Court must consider: (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative

11

services; (5) the applicable guideline range; and (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants.  18 U.S.C. § 3553(a). On balance, these factors also weigh against granting Mr. Bell's Motion for Compassionate Release.

In conducting an individualized assessment of Mr. Bell and his case, the Court first considers his personal history and characteristics. Mr. Bell's arguments related to his youth at the time of the offense and his traumatic childhood fit firmly within this factor. As to his youth at the time of the offense, Mr. Bell cites to publications which, he states, demonstrate that youthful defendants are "vulnerable to peer pressure," "prone to impulsivity," and "stimulus seeking." (ECF No. 565 at 12–13.)  As explained above, however, Mr. Bell was not considered a youth at the time of the instant offense.  Moreover, even if his age at the time of the offense did constitute youth status, the instant offenses were not impulsive but rather reflected a deliberate plan to orchestrate several murders. (ECF No. 200, Attach. A); *see United States v. Brown*, No. 2:11-cr-152, 2024 WL 3357836, at *6 (E.D. Va. July 10, 2024) (reasoning that a "defendant's deliberate, planned act in the instant offense . . . combined with his previous criminal conduct, undermines the argument that his actions resulted primarily from youthful impulsivity."). As to personal history, a court may consider evidence of a difficult, traumatic childhood under § 3553(a)(1) as a mitigating factor, but a traumatic childhood alone is insufficient. *See, e.g.*, *United States v. Harris*, Crim. No. SAG-05-0061, 2026 WL 318977, at *4 (D. Md. Feb. 6, 2026).

Although Mr. Bell received several disciplinary infractions early in his incarceration, (ECF No. 560 at 11–12), he has made significant progress toward rehabilitation by completing his General Education Development test, maintaining steady employment, and participating

in therapeutic and rehabilitative courses. (*Id.*)  Such efforts are commendable and weigh in favor of relief. *See, e.g.*, *United States v. Martin*, Crim. No. RDB-04-0029, 2021 WL 3172278, at *3 (D. Md. July 27, 2021) (finding the defendant's rehabilitative efforts, including his participation in both educational and therapeutic courses, to weigh in favor of relief).

Nevertheless, the remaining § 3553(a) disfavor relief in this case.  As an initial matter, the need to deter recidivism and provide rehabilitative services, and the applicable guideline range weigh against relief.  Under these factors, a court may place significant weight on criminal history, especially when there is a heightened concern of recidivism due to numerous prior convictions. *Compare United States v. Davis*, 130 F.4th 114, 126–28 (4th Cir. 2025) (relying significantly on the defendant's extensive criminal history to justify sentence where he had repeated incarceration and gang affiliations), *and United States v. Morsley*, Crim. No. RDB-08-401, 2022 WL 1062020, at *4 (D. Md. Apr. 8, 2022) (considering the defendant's lengthy criminal history as part of the § 3553 analysis to weigh against relief), *with United States v. Hegie*, Crim. No. RDB-14-411, 2022 WL 605383, at *3 (D. Md. Mar. 1, 2022) (acknowledging that a defendant's limited criminal history may weigh in favor of relief).  In this case, Mr. Bell's history of criminal involvement is extensive, suggesting that a significant sentence is appropriate to deter recidivism and protect the community.   *See* (PSR ¶¶ 28–36 (listing six prior convictions, including assault and drug-related charges)).  Indeed, Mr. Bell's prior convictions resulted in his classification as a career offender at sentencing in this case.[10] (*Id.*)

---

[10] A defendant is a "career offender" if (1) the defendant was at least eighteen years old at the time of the instant offense; (2) the instant offense is a felony that is either a "crime of violence" or a "controlled substance offense"; and (3) the defendant has at least two prior felony convictions for either a "crime of violence" or a "controlled substance offense." U.S.S.G. § 4B1.1(a).

Furthermore, Mr. Bell's sentence of 360 months, already within the Sentencing Guidelines range and agreed upon by both parties in the plea agreement, reflects the nature and circumstances of both his direct involvement in multiple contracted killings and a long history of criminal activity. *See United States v. Bond*, 56 F.4th 381, 384–85 (4th Cir. 2023) (explaining that in weighing § 3553(a) factors, courts should avoid changing a plea agreement's terms absent compelling circumstances, particularly when the exact sentence negotiated in the agreement is imposed). His instant offense was serious and violent in nature—the uncontested facts indicate that he planned and executed a murder-for-hire conspiracy in connection with organized crime, (ECF No. 200, Attach. A)—which weighs against relief. *See Morsley*, 2022 WL 1062020, at \*4 (finding that the serious and violent nature of the defendant's offenses, which included participating in armed robberies, weighed against relief).  Finally, there is no evidence that Mr. Bell's sentence reflects an unwarranted sentencing disparity. As explained above, this Court generally imposes sentences of approximately thirty years for similarly situated defendants. *See, e.g.*, *Carmichael*, 2023 WL 6809714, at \*3. Mr. Bell received a 360-month sentence, which is on par with sentences applied to similar defendants who held leadership roles in similar crimes. *See* (ECF No. 200.)  Accordingly, the nature and circumstances of the offense, the applicable guideline range, and the need to avoid sentencing disparities each disfavor relief.  On balance, therefore, the § 3553(a) factors weigh against relief in this case. For these reasons, Mr. Bell's Motion for Compassionate Release (ECF No. 560, 565) is DENIED.

## CONCLUSION

For the reasons stated above, it is hereby ORDERED this 4th day of March 2026 that

Defendant's Motion for Compassionate Release (ECF Nos. 560, 565) is DENIED.

A separate Order follows.

/s/

Richard D. Bennett
United States Senior District Judge